IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ALFRED PORTILLO, JR.,**

      **Plaintiff,**

    v.                                          Civ. No. 20-1255 KK

**KILOLO KIJAKAZI, Acting
Commissioner of Social Security,**

      **Defendant.**

## **MEMORANDUM OPINION AND ORDER[1]**

THIS MATTER is before the Court on Plaintiff Alfred Portillo, Jr.'s Motion to Reverse the Administrative Law Judge (ALJ's) Unfavorable Decision Dated April 29, 2020, or Alternatively, to Remand the Case Back to the Administrative Law Judge, filed July 6, 2021.[2] (Doc. 26). The Acting Commissioner of the Social Security Administration ("Commissioner") filed a Response, and Mr. Portillo filed a Reply. (Docs. 31, 32.) Having meticulously reviewed the entire record and relevant law, and being otherwise fully advised, the Court finds that Mr. Portillo's Motion is well-taken and should be GRANTED.

### I. BACKGROUND AND PROCEDURAL HISTORY

Mr. Portillo brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the Commissioner's decision denying his claims for disability insurance benefits ("DIB") and

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 12.)

[2] Mr. Portillo filed a memorandum in support concurrently with the motion. (Doc. 27.)

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434 and 1381–1383f. (Doc. 2 at 2; Doc. 26; AR 11–22.)[3]

Mr. Portillo filed claims for DIB on February 20, 2018 and for SSI on May 7, 2018. (AR 79, 80.) Both allege disability beginning on January 23, 2018 due to human immunodeficiency virus ("HIV"), high blood pressure, panic disorder, chronic depression, post-traumatic stress disorder ("PTSD"), left shoulder impingement, headaches, a bad left eye, and an unsteady gait. (AR 174, 179.) Mr. Portillo's claim was denied initially and upon reconsideration. (AR 174, 179, 185, 192.) He requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 12, 2020. (AR 38, 201.)

On April 29, 2020, the ALJ issued an unfavorable ruling. (AR 11–22.) Applying the Commissioner's five-step evaluation process,[4] the ALJ determined at step one that Mr. Portillo had not engaged in substantial gainful activity since his alleged onset date. (AR 14.) At step two, the ALJ found that Mr. Portillo suffers from the severe impairments of chronic depression, panic disorder, dysthymic disorder, and PTSD, and the non-severe impairments of osteoarthritis of the

---

[3] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on May 11, 2021. (Doc. 22.)

[4] The five-step sequential evaluation process requires the ALJ to determine whether:

(1) the claimant engaged in substantial gainful activity during the alleged period of disability;
(2) the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
(3) any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4) the claimant can return to his past relevant work; and, if not,
(5) the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

right knee, HIV infection, hypertension, epiretinal membrane, and type II diabetes mellitus. (*Id.*) At step three, the ALJ determined that Mr. Portillo's impairments do not meet or medically equal the severity of one of the Listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (*Id.*)

In his step four analysis,[5] the ALJ observed that,

> [a]t the hearing, [Mr. Portillo] alleged that he could not work due to chronic depression and anxiety, and due to panic attacks occurring 3-4 times a week for 8-10 minutes at a time. [Mr. Portillo] described difficulty sleeping at night, poor concentration, and loss of interest, and he alleged that his mental impairments caused him to stay at home at all times except to walk his dog. He testified that he has a caregiver who performs most tasks that would require leaving the home, such as shopping and errands. He stated that he stopped reading books and magazines because he could not focus long enough. Additionally, [Mr. Portillo] testified that he has an unsteady gait due to back pain and osteoarthritis in his knees, and that he uses a cane. He also alleged that he has dizziness and poor balance due to side effects of his HIV medications. [Mr. Portillo] acknowledged that his hypertension is under control and does not currently cause problems. He alleged that his human immunodeficiency virus (HIV) infection causes chronic diarrhea [that] sometimes goes out of control, and that he also has diabetes and poor eyesight.

(AR 16.) The ALJ determined that Mr. Portillo's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but also that Mr. Portillo's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*)

The ALJ found that

> [Mr. Portillo] has the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Mr. Portillo] can understand, carry out, and remember simple and some detailed instructions, and can make commensurate work-related decisions. [Mr. Portillo] can respond appropriately to supervision, coworkers, and work situations, even

---

[5] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

3

with routine changes in work setting. [Mr. Portillo] can maintain concentration, persistence, and pace for up to and including 2 hours at a time with normal breaks throughout a normal workday. He is capable of meeting end-of-day goals, and he should not work in close proximity to others. [Mr. Portillo] is limited to occasional interaction with coworkers and supervisors, and incidental contact with the general public.

(AR 15.) The ALJ then determined that Mr. Portillo could not perform his past relevant work, which was as a rehabilitation aide, caregiver, and nurse aid. (AR 20–21.)

At step five, the ALJ relied on the Vocational Expert's testimony that an individual with Mr. Portillo's age, education, work experience, and assigned RFC could perform jobs including routing clerk, shelving clerk and industrial cleaner, and found that there are jobs that exist in significant numbers in the national economy that Mr. Portillo can perform. (AR 21–22.) The ALJ therefore concluded that Mr. Portillo "has not been under a disability, as defined in the Social Security Act, from January 23, 2018, through the date of this decision[.]" (AR 22.)

Mr. Portillo appealed the decision to the Appeals Council. On October 22, 2020, the Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision from which Mr. Portillo now appeals. (AR 1.)

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citations and quotations omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (citations and quotations omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citations, quotations, and alterations omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his [or her] decision, the ALJ also must discuss the uncontroverted evidence he [or she] chooses not to rely upon, as well as significantly probative evidence he [or she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his [or her] specific findings and his [or her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### III. Discussion

Mr. Portillo contends that the ALJ erred in determining his RFC by failing to properly consider all of his medically determinable impairments and wrongly discounting the evidence of his use of home care services. (*See* Doc. 27 at 15–16, 17–18.) For the reasons below, the Court finds these arguments well taken, and remand is warranted.[6]

**A. The ALJ failed to consider Mr. Portillo's HIV medication side effects and panic disorder when assessing his RFC.**

When assessing a claimant's RFC, an ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the] medically determinable impairments that are not 'severe[.]'" 20 C.F.R. § 404.1545(a)(2). Here, when assessing Mr. Portillo's RFC, the ALJ failed to consider the side effects from Mr. Portillo's HIV medication as well as Mr. Portillo's panic disorder.

*1. The ALJ failed to consider the side effects of Mr. Portillo's HIV medication.*

Mr. Portillo lives with HIV, and takes Descovy, Norvir, and Prezista to control the infection. (AR 59, 445, 446, 610.) Mr. Portillo has "excellent medication compliance"; his infection is well controlled and his viral load is undetectable. (AR 489, 526.) However, Mr. Portillo asserts that he suffers bouts of dizziness and chronic diarrhea as side effects from his medications. These are not uncommon adverse reactions: Descovy is known to cause dizziness, Prezista is known to cause diarrhea, and Norvir is known to cause both dizziness and diarrhea. *See* Am. Soc'y of Health-System Pharmacists, Emtricitabine and Tenofovir (Sept. 15, 2020), https://medlineplus.gov/druginfo/meds/a612036.html (last accessed Jan. 3, 2022); Am. Soc'y of

---

[6] Mr. Portillo also contends that the ALJ made other errors warranting reversal. (*See* Doc. 27 at 7–18.) The Court will not address these remaining claims because they may be affected on remand. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Health-System Pharmacists, DARUNAVIR (June 15, 2019), https://medlineplus.gov/druginfo/meds/a607042.html (last accessed Jan. 3, 2022); Am. Soc'y of Health-System Pharmacists, RITONAVIR (Jan. 15, 2021), https://medlineplus.gov/druginfo/meds/a696029.html (last accessed Jan. 3, 2022)[7]. Despite these side effects, Mr. Portillo testified that his HIV medications work, "so my doctor says, basically, she says don't – if it's not broken, don't fix it." (AR 57.)

Mr. Portillo's physicians have diagnosed him with "[d]izziness," noting that it is "likely due to medications." (AR 561.) And because of his "dizzy spells," Mr. Portillo worries about falling. (AR 536). Mr. Portillo testified that he has "fallen at times," (AR 61), and his medical records show that he has reported falls to his providers on four occasions, (AR 487, 503, 547, 611). Mr. Portillo also testified that he was prescribed a cane by his doctor because of his dizziness and gait instability, which he uses to stabilize himself. (AR 51–52.)

Mr. Portillo's medical records do not refer to his alleged chronic diarrhea. But diarrhea is a common and well-documented side effect of Mr. Portillo's HIV medications, and it is not unreasonable for Mr. Portillo to have not reported well-known symptoms when they were unrelated to his chief medical complaints. *See, e.g., Kirby v. Astrue*, 568 F. Supp. 2d 1225, 1232–33 (D. Colo. 2008) ("[I]t is not necessary—nor even expected—that a claimant report 'side effects' *per se* to his physician when the side effects are those expected from the medications prescribed."). At the hearing, Mr. Portillo testified that his "chronic diarrhea" occurs "[m]aybe four times a week," (AR 58), and in his Function Report, he stated that "the diarrhea is constant[,] and I am in the bathroom often," (AR 381).

---

[7] In Norvir clinical trials, 67.9% of patients reported diarrhea and 15.6% of patients reported dizziness (N = 1,755). *See* Highlights of Prescribing Information at 10–11, NORVIR, https://www.accessdata.fda.gov/drugsatfda_docs/label/2020/020659s072,022417s024,209512s007lbl.pdf (last accessed Jan. 3, 2022).

The ALJ made note of Mr. Portillo's allegations of "dizziness and poor balance due to side effects of his HIV medications" and that Mr. Portillo "alleged that his human immunodeficiency virus (HIV) infection causes chronic diarrhea" that "sometimes goes out of control."[8] (AR 16.) But in the RFC analysis, these side effects were not discussed. When considering limitations due to Mr. Portillo's HIV infection, the ALJ found that Mr. Portillo's "medical records do not indicate that his HIV infection . . . ha[s] caused any significant chronic or ongoing symptoms," and therefore it would not have "more than a minimal effect on [Mr. Portillo's] ability to meet the basic demands of work activity[.]" (AR 17.)

When considering limitations based on Mr. Portillo's reported gait instability and use of a cane, the ALJ found that Mr. Portillo's treatment records "do not mention a cane, nor do they describe any abnormal gait, weakness, or other findings that would support a need for a cane or other assistive device, or any exertional limitations for that matter." (*Id.*) The ALJ found insufficient evidence to support a finding that Mr. Portillo "has a need for a cane or any other significant physical limitations." (*Id.*) The ALJ determined that Mr. Portillo had the RFC "to perform a full range of work at all exertional levels." (AR 15.)

An ALJ must include all medically determinable impairments in his or her RFC assessment, including adverse drug reactions. *See Hamby v. Astrue*, 260 F. App'x 108, 113 (10th Cir. 2008) (finding that the ALJ had "applied incorrect legal standards and failed to articulate his reasoning with sufficient specificity" because the ALJ had failed to "even make a perfunctory comment on . . . [the claimant's] additional testimony concerning medication side effects limiting

---

[8] The ALJ's phrasing suggests that he may have attributed Mr. Portillo's diarrhea to the HIV infection and not to his medications. The record is clear that Mr. Portillo's chronic diarrhea is a side effect of his medications, (*see, e.g.*, AR 374), and a finding otherwise would not be supported by substantial evidence.

her ability to concentrate, drowsiness, use of an assistive device, and the need to alternate standing and sitting,"). Here, the ALJ's discussion of Mr. Portillo's HIV infection makes no mention of his medication side effects, and the discussion of Mr. Portillo's use of a cane does not address Mr. Portillo's reported bouts of dizziness. Because of this, the Court cannot determine whether the ALJ properly considered these impairments.

>   2. *The ALJ failed to consider Mr. Portillo's panic disorder.*

Mr. Portillo has been diagnosed with "Panic disorder without agoraphobia" and prescribed Alprazolam for his panic attacks. (AR 446, 507.) He has reported that the medication is helpful, but he still suffers from "uncued panic attacks." (AR 493, 505.) At the hearing, Mr. Portillo testified that he normally has three to four panic attacks a week, and they last eight to ten minutes. (AR 49.) In his Function Report, Mr. Portillo stated that "when I have panic attacks[,] I feel I'm going to die." (AR 308.)

The ALJ determined at step two that Mr. Portillo's panic disorder was a severe impairment, (AR 14), and at the start of step four, the ALJ noted Mr. Portillo's allegation "that he could not work . . . due to panic attacks occurring 3-4 times a week for 8-10 minutes at a time." (AR 16.) However, at the start of the RFC analysis, when he summarized Mr. Portillo's mental impairments, the ALJ included each of Mr. Portillo's mental health diagnosis and symptoms except for those related to Mr. Portillo's panic disorder. The ALJ stated:

> The treatment records describe symptoms of anxiety and depression including loss of interest, feelings of depression, anxious mood, poor sleep, and irritability. The Claimant was diagnosed with dysthymic disorder, posttraumatic stress disorder (PTSD), and chronic depression. The Claimant was prescribed medications including Lexapro and alprazolam. He receives psychotherapy on a monthly basis.

(AR 17 (citations omitted).) Likewise, the RFC analysis did not contain any discussion of Mr. Portillo' panic disorder. The ALJ discussed Mr. Portillo's "symptoms of anxiety and depression

9

including loss of interest, feelings of depression, anxious mood, poor sleep, and irritability," (AR 20), but made no mention of Mr. Portillo's panic attacks. Despite finding at step two that Mr. Portillo's panic disorder is a severe impairment, there is no indication that the ALJ considered it at step four.

The Commissioner contends that the Court "should take the ALJ at his word" when he stated that he "reviewed and considered [Mr. Portillo's] complete medical history." (Doc. 31 at 18 (quoting AR 16)). But boilerplate language "is insufficient, in the absence of a more thorough analysis[.]" *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). While an ALJ is not required to be technically perfect in the articulation of his analysis, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012), the discussion must be sufficiently comprehensive to allow for adequate review. The ALJ's discussion of Mr. Portillo's impairments in the RFC assessment fails to meet this requirement. Because the ALJ's RFC analysis contains no discussion or mention of Mr. Portillo's HIV medication side effects or panic disorder, the Court must reverse and remand. *See Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006) (finding that the ALJ's failure to consider a claimant's impairments "requires that we reverse").

**B. The ALJ improperly disregarded evidence of Mr. Portillo's use of home care services.**

Mr. Portillo reported that he suffers from insomnia because of his depression and HIV medications, (AR 344), and he testified that he sleeps only three hours a night, (AR 50). He is home bound due to his PTSD and lives alone in an apartment in senior housing.[9] (AR 363, 536.)

---

[9] Mr. Portillo only has two surviving family members, a sister and nephew; his other siblings are deceased, and his son was murdered. (AR 536–37.) He reported to his physician that he has had "no close friendships since his HIV diagnosis" in 1997. (AR 485, 486.)

The only time Mr. Portillo leaves his apartment is when he takes his small dog outside twice a day. (AR 51.)

Mr. Portillo receives 14 hours a week of home care services; two hours each weekday, and four hours on alternating Saturdays and Sundays. (AR 60, 86.) His caregivers cook his meals, clean his apartment, do his laundry, pay his bills, do his shopping, and run his errands. (AR 51, 369.) They also remind him "at times" to change his clothes, bathe, and shave, and provide "standby safety" support to prevent falls when he showers. (AR 61, 369, 434).

Mr. Portillo began receiving home care services in 2015. (AR 51.) He testified that it was recommended by his doctor because "[s]he thought . . . it would be a benefit to me." (AR 61.) He further testified that his home care services were approved by BlueCross BlueShield ("BCBS") after an adjuster performed an assessment finding him eligible. (*Id.*) The record shows that BCBS authorized 14 hours per week of personal care services. (AR 435.) BCBS requires preauthorization before providing health insurance coverage of home care, and require a recent physical, the proposed plan of care, and "documentation of medical necessity." *See* BlueCross BlueShield of New Mexico, New Mexico Medicaid Benefit Preauthorization Procedure Code List Effective 1/1/2020, at 108, https://www.bcbsnm.com/pdf/cc_prior_auth_fullgrid.pdf (last accessed Jan. 3, 2022). The record contains Mr. Portillo's approved plan of care, which appears to have been prepared by Mr. Portillo's "Care Coordinator," Inez Quinones, R.N. (AR 434.)

The ALJ noted that Mr. Portillo used home care services, but apparently rejected it as relevant or probative evidence. (AR 18, 20.) The ALJ explained that "the medical evidence of record does not contain any evidence that a healthcare provider advised the Claimant to obtain home care services or believed that such services were necessary," (AR 18, 20), and made no discussion of it when determining his limitations.

The ALJ's apparent rejection of this evidence is improper for two reasons. First, Mr. Portillo testified under oath that his doctor had initially recommended home care services. (*See* AR 61 ("Q: How did you come about to home health? A: Through my doctor.").) The ALJ appears to have determined, *sub silentio*, that this testimony was not credible, but "findings as to credibility should be closely and affirmatively linked to substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations, quotations, and alterations omitted). And here, the ALJ's finding could not be based on substantial evidence because "[t]he absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quotations and citations omitted). But to meet this standard, the ALJ must do more than point to a perceived gap in the record. If the ALJ is to discount Mr. Portillo's testimony on this subject, he must articulate his reasoning based on the evidence in the record.[10]

Second, the ALJ's contention that "the medical evidence of record does not contain any evidence that a healthcare provider . . . believed [home care] services were necessary," (AR 18), is not supported by substantial evidence. As discussed above, the record shows that Mr. Portillo's home care was coordinated by a registered nurse, (AR 434), and the record further shows that his care coordinator was actively involved in managing his care. (*See, e.g.*, AR 438, 439, 441 (referring

---

[10] Moreover, if the ALJ believes the record is insufficient to properly consider Mr. Portillo's use of home care in his RFC analysis, the ALJ has a duty to develop the record. This duty exists "even if the claimant is represented by counsel." *Thompson*, 987 F.2d at 1492; *see also Baker v. Bowen,* 886 F.2d 289, 292 (10th Cir.1989) (holding that the ALJ erred in relying on a "dearth of objective medical evidence" when the evidence was within their power to obtain).

to Mr. Portillo's "C.C.")). The "medical evidence of record" contains some evidence indicating that a "healthcare provider" believed home care was necessary, and the ALJ was incorrect to assert otherwise. *See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (finding ALJ's conclusion not supported by substantial evidence in the record where the finding was "belied" by a letter in the record).

An ALJ is not required to discuss every piece of evidence, but he or she must provide an explanation of findings sufficient to allow meaningful review. *See Fischer-Ross*, 431 F.3d at 734; *see also Clifton*, 79 F.3d at 1009 (remand is warranted when an ALJ's "conclusion is beyond meaningful judicial review"). Mr. Portillo's use of home care services is relevant in the analysis of Mr. Portillo's RFC, and because the ALJ wrongly rejected the evidence and therefore did not discuss it, the Court cannot meaningfully review the ALJ's RFC analysis, including his determinations that Mr. Portillo had no significant physical limitations and that Mr. Portillo's "mental impairments cause no more than mild limitation in adapting or managing oneself." (AR 17, 19.)

The Commissioner argues that under the revised regulatory framework the ALJ was not required to discuss Mr. Portillo's use of home care services.[11] The Commissioner asserts that under the revisions, an ALJ is only required to "articulate his consideration of the persuasiveness of medical opinions and prior administrative medical findings, not other medical evidence." (Doc. 31 at 18 (citing 20 C.F.R. § 404.1520c(b)). But the revised regulations, on which the Commissioner relies, only discuss how ALJs should consider and articulate medical opinions, prior administrative

---

[11] The regulations governing the agency's evaluation of medical evidence were revised effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017). Mr. Portillo's claims are under the revised framework.

13

medical findings, and evidence from nonmedical sources. 20 C.F.R. § 404.1520c. They are silent as to *other medical evidence*.[12] The Tenth Circuit has provided clear guidance as to how ALJs must articulate their consideration of probative evidence. *See, e.g., Clifton*, 79 F.3d at 1009–10; *Hardman*, 362 F.3d at 681; *Keyes-Zachary*, 695 F.3d at 1166. The revised framework does not call the Tenth Circuit's binding precent into question. Because the ALJ failed to properly consider and discuss Mr. Portillo's use of home care services, remand is warranted.

## IV. Conclusion

For the reasons above, the Court determines that the ALJ failed to adequately consider all of Mr. Portillo's impairments and failed to properly consider Mr. Portillo's use of home care services when assessing Mr. Portillo's RFC. Because of these errors, the Court cannot conclude that the ALJ's findings are supported by substantial evidence or that the ALJ applied the correct legal standards. Remand is therefore warranted. Mr. Portillo's Motion to Reverse the Administrative Law Judge (ALJ's) Unfavorable Decision Dated April 29, 2020, or Alternatively, to Remand the Case Back to the Administrative Law Judge (Doc. 26) is GRANTED and this matter

---

[12] Mr. Portillo's Adult Personal Care Services plan of care, (Doc. 434), is evidence from "a medical source" that contains a "judgment[] about the nature and severity of [Mr. Portillo's] impairments." 20 C.F.R. § 404.1513(a)(3). It is therefore "other medical evidence" under the revised evidentiary framework.

In *Carpenter v. Astrue*, the Tenth Circuit found that the ALJ erred in disregarding medical evidence from a non-acceptable medical source, because although such evidence was not relevant to diagnosing an impairment, it was "relevant to the questions of *severity* and *functionality*," 537 F.3d 1264, 1268 (10th Cir. 2008) (emphasis in original). This holding was under the previous evidentiary framework and relied on a case citing a now rescinded Social Security ruling. *Id.* (citing *Frantz v. Astrue*, 509 F.3d 1299, 1301–02 (10th Cir.2007) (discussing S.S.R. 06–03p, 2006 WL 2329939, at *4–*6)); *see Rescission of Social Security Rulings 96–2p, 96–5p, and 06–3p*, 82 Fed. Reg. 15263 (Mar. 27, 2017). However, the *Carpenter* Court's analysis of evidence from a non-acceptable medical source is consistent with "other medical evidence" in the revised evidentiary regulations. *See* 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence . . . include[s] judgments about the nature and severity of [a claimant's] impairments"); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence, Notice of Proposed Rulemaking*, 81 Fed. Reg. 62563 (Sept. 9, 2016) (emphasis added) ("We propose to move judgments about the *nature and severity* of a claimant's symptoms, diagnosis, and prognosis from the current definition of medical opinion to the proposed definition of other medical evidence").

is remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

    IT IS SO ORDERED.

*Kirtan Khalsa*
_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE